# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 CR 697 - 1 | **DATE** | 3/5/2001 |
| **CASE TITLE** | USA vs. Andrew Traeger | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Accordingly this court determines that counsel's motion for a new trial on Traeger's behalf is totally empty of merit, and it is denied. It is long past time for Traeger to be sentenced, and that subject will be addressed at the previously-scheduled March 7, 2001 status hearing. (108-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 0 7 2001 | |
| | Notified counsel by telephone. | | date docketed | /// |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 3/6/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SN | courtroom deputy's initials | MAR -6 PM 2:45 Date/time received in central Clerk's Office | SN mailing deputy initials | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 97 CR 697 |
| ANDREW TRAEGER, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

After Andrew Traeger ("Traeger") was found guilty in a March 25, 1999 (sic) jury verdict on both counts of an indictment that charged him with committing two bank robberies in a short span of time, Traeger engaged in a whole series of procedural efforts to avoid the consequences of that guilty verdict.[1] This Court has extended extraordinary leeway to Traeger, including the appointment of new counsel and the granting of numerous and extended continuances, to enable him to mount any even colorable challenges to his conviction. That new counsel--Ralph Meczyk, Esq. ("Meczyk")--has, after another extraordinarily protracted period, come up with a motion for new trial based on Clarke's assertedly ineffective assistance, but that effort has done

---

[1] All of the delays in getting to trial were the product of near-Herculean efforts by Traeger's counsel (both his original lawyer and the lawyer who ultimately handled the case--Robert Clarke, Esq. ("Clarke"))--that created appropriate time exclusions under the Speedy Trial Act. From this Court's observation, counsel left no stone unturned in an effort to obtain some arguable defense against the overwhelming proof of Traeger's guilt.

nothing more than to recall the maxim variously ascribed to Aesop, Phaedrus and Horace--the last of whom said in his <u>Ars Poetica</u> "parturient montes, nascetur ridiculus mus," which has been translated as:

The lab'ring mountain scarce brings forth a mouse.

In response to Meczyk's motion, which requests an evidentiary hearing as to the several claims that he advances on Traeger's behalf, a responsive memorandum has been filed by Assistant United States Attorney Susan Haling, who unlike Meczyk was trial counsel and has lived with this case (just as this Court has) since its inception. That memorandum has appropriately invoked the standard for judging the constitutionality of counsel's representation that was announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and that has been repeated and applied on innumerable occasions by <u>Strickland</u>'s progeny since then. Indeed, the government's memorandum is so thorough and so unanswerable as to require no elaboration. In summary:

> 1. There was no basis whatever for Clarke to have taken any action with respect to the proffer that had been made by Traeger pursuant to a January 16, 1998 proffer agreement. No issue ever arose before or during trial that called for the presentation of evidence of the proffered statement, and there was no occasion whatever for Clarke's

2

presenting some sort of pretrial motion regarding the proffer.

2. Any attempt to have severed the two bank robberies would have been doomed to failure. This was a classic instance for the application of Fed. R. Crim. P. 8(a). There is no requirement that a defense counsel must advance an argument that is so patently a dead-bang loser.

3. Meczyk's motion distorts the facts by charging Clarke with ineffectiveness in not having delayed the trial until a hoped-for witness turned up. Exactly the opposite is true: Clarke sought and obtained several extensions of the trial as part of his diligent efforts to locate the missing putative witness (efforts that included the obtaining of an order from this Court granting funds for an investigator, who then proceeded to search for the witness). All of those efforts proved unsuccessful, and under the circumstances this Court denied Clarke's effort to obtain still another extension of the trial date for a further search (there being no indication that further efforts would be more fruitful). In that respect, the government's responsive memorandum is also correct in identifying the total lack of arguable prejudice to Traeger by reason of the inability to come up with someone who was at best a marginal witness (not truly an alibi witness at all).

4. As the government also points out with total accuracy, Traeger's contention about the failure to provide him with proper clothing during the trial is truly frivolous. Traeger himself gave Clarke the wrong information, telling him his waist size was 52 inches rather than the actual 60 inches.[2] And the clothing that was then obtained for Traeger to wear during the trial, on short notice and with the use of government funds, was in no way unduly suggestive or prejudicial.

5. Finally, Traeger has now for the first time claimed that an issue that this Court rejected in response to Traeger's own pro se motion for a new trial--an issue stemming from an incident in which he believes one of the jurors saw him in handcuffs through a fluke--is something that he now says he did not raise before the jury verdict based on Clarke's advice. As the government properly points out, no evidentiary hearing is required on that score because there is no basis for a finding of prejudice from that arguable brief sighting (something that is factually

---

[2] Though this has not been made the subject of Meczyk's current motion, it is typical of Traeger's effort to escape the inevitable that his own earlier pro se attacks included challenges to the identification testimony--Traeger is something like 6'6" tall and weighs well over 300 pounds, and the descriptions given by the two bank tellers and others unquestionably matched Traeger and were further fortified by in-court identifications.

4

doubtful to begin with).  In the total absence of any prejudice (the second branch of the Strickland analysis), no evidentiary hearing is required.

Accordingly this Court determines that counsel's motion for a new trial on Traeger's behalf is totally empty of merit, and it is denied.  It is long past time for Traeger to be sentenced, and that subject will be addressed at the previously-scheduled March 7, 2001 status hearing.

_____
Milton I. Shadur
Senior United States District Judge

Date:  March 5, 2001